THE STATE, EX REL. CLEVELAND MUNICIPAL COURT, *v.*
CLEVELAND CITY COUNCIL.

(No. 72-320—Decided May 16, 1973.)

*Mr. Edwin F. Woodle,* for relator.

*Mr. Herbert R. Whiting,* director of law, and *Mr. Howard H. Fishkin,* for respondent.

STERN, J. Fundamental to both the complaint and the counterclaim is the nature of the parties thereto. On its face, the complaint is brought by the Cleveland Municipal Court rather than by the individual judges thereof. A court, however, is not *sui juris.* " 'A court is defined to be a place in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law.' " *Todd* v. *United States* (1895), 158 U. S. 278, 284. Absent express statutory authority, a court can neither sue nor be sued in its own right.

However, examination of the complaint reveals that this action is proper in that it is brought by the existing judges of the Municipal Court who are public officers clothed with judicial authority. Having so concluded, it follows that the eight individual judges named in the coun-

terclaim are proper parties against whom the counterclaim *could* be filed.

It should be noted, however, that the Cleveland City Council likewise is not *sui juris* and, absent statutory authority it cannot sue or be sued as such. An action involving the council should be brought against the city, or against the existing councilmen. Examination of the complaint and counterclaim, however, suffices to convince us that the respondent in fact is the councilmen individually.

It is evident, therefore, that the individual judges could not avoid the counterclaim on the ground that they were not parties to the original action. The counterclaim fails, however, in that Section 2(B) (1) of Article IV of the Ohio Constitution, which prescribes the original jurisdiction of this court, does not include original actions for money judgment.

Respondent contends that we have jurisdiction pursuant to Civ. R. 13(B), which provides: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing parties claim." We agree that a permissive counterclaim of this nature could be brought in a proper jurisdiction, but neither the Civil Rules nor statutes can expand this court's original jurisdiction and require it to hear an action not authorized by the Ohio Constitution.

Respondent argues further that Section 2(B) (1) (f) of Article IV of the Ohio Constitution[2] authorizes this court to determine this counterclaim. The determination sought is a judgment against eight Municipal Court judges for money paid them, under color of law, as an increase in pay during their term of office.

In paragraph one of the syllabus in *State, ex rel. Wallace,* v. *Celina* (1972), 29 Ohio St. 2d 109, decided March 1, 1972, this court held that: "Under the provisions of Section 20 of Article II of the Ohio Constitution, the salary

---

[2]The Supreme Court shall have original jurisdiction * * * in any cause on review as may be necessary to its complete determination."

of a Municipal Court judge may not be increased during his term of office.'' Prior to that decision, and subsequent to the enactment of Section 6(B) of Article IV of the Ohio Constitution, effective May 7, 1968, and the amendment of R. C. 1901.11, effective June 10, 1968, the status of the law on this question was unclear. It was during this period that the contested money payments were made under authority of judicial pronouncements by lower state courts. We intimate no view as to that question in concluding that its resolution is not necessary to the complete determination of the cause set forth in the complaint before us.

The motion to dismiss the counterclaim is allowed.

As to the complaint, respondent contends it should be dismissed as moot, because there are no remaining outstanding vouchers for 1972 which have not been paid.[3] To do so would be to ignore the essence of the complaint, for, although no vouchers remain unpaid for the year in question, it is apparent that (1) this was partially accomplished by deficit financing from the 1973 budget and (2) not all funds or items requested were granted.[4]

Additionally, the second cause of action in the complaint requests funds for the use of courtroom No. 6; for expenses covering the installation and operation of air conditioning for the court during the summer; and for the purchase, installation and operation of an electronic computer system to assist the court in its administration. Those items, not having been provided by respondent, prevent the issue from being moot.

---

[3]The original complaint set forth a demand for $237,039 as the additional amount relator required for the proper administration of the Cleveland Municipal Court. This demand was modified to the sum of $6,254.48 after a supplemental appropriation was made by respondent. It should also be noted that Ralph Muntz, Commissioner of Accounts, City of Cleveland, by affidavit has stated that: "each and every voucher received from the Cleveland Municipal Court incurred in 1972 has been paid," and "that a charge of $2,683.79 has been allocated out of the 1973 account of the Cleveland Municipal Court."

[4]A similar action filed in 1971 by relator was dismissed when respondent provided a supplemental appropriation sufficient to provide for the court's requirements during that year.

Finally, we arrive at respondent's contention that city council has complied with its statutory duty, and that consequently a writ of mandamus may not issue. We note foremost that "* * * mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." R. C. 2731.01; paragraph three of the syllabus in *State, ex rel. Selected Properties,* v. *Gottfried* (1955), 163 Ohio St. 469. Before mandamus may lie it must be ascertained that the Cleveland City Council has, because of its official status or by operation of law, a specific duty to perform the act sought to be ordered by the writ.

The specific action sought herein is the unquestioned allotment and distribution by city council of *all* funds requested by the Municipal Court for the purpose of administering the Municipal Court so long as the court has not abused its discretion in making the request. Relator relies heavily upon this court's holding in the first and second paragraphs of the syllabus in *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89, which provide:

"1. The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.

"2. Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of government. (Paragraph two of the syllabus in *Zangerle* v. *Court of Common Pleas,* 141 Ohio St. 70, approved and followed.)"

In that case, we reaffirmed the separation of the judiciary from the executive and legislative branches of government, acknowledging the necessity of having the judi-

ciary free from infringements to the greatest extent possible. We did not hold that legislative authorities have an *inherent* duty to allocate *all* the funds requested by a Municipal Court, without regard to the limited funds available for disbursement to all departments and divisions of city government and the ability of the court to properly exercise its judicial function.

Contrary to relator's reading of *State, ex rel. Foster,* v. *Bd. of County Commrs., supra,* such a duty does not inherently exist even where the request is reasonable and does not constitute an abuse of discretion. As indicated by paragraph three of the syllabus, that case was controlled by statute, for the stated reason that:

"Under the provisions of Section 2151.10, Revised Code, determination of the necessary annual administrative expenses of the Juvenile Court lies solely within the sound discretion of the juvenile judge, and the Board of County Commissioners has no authority to substitute its judgment for that of the juvenile judge by appropriating an amount less than that requested."

R. C. 2151.10 has no application to the funding of Municipal Court expenses. We must then examine R. C. Chapter 1901, which provides the statutory scheme regarding Municipal Courts in Ohio.

Compensation for municipal judges is fixed by R. C. 1901.11, which also provides that: " * * * the compensation of municipal judges *shall* be paid in semimonthly installments, three-fifths of such amount being payable from the city treasury and two-fifths of such amount being payable from the treasury of the county in which such city is situated." (Emphasis added.) Clearly, there exists a duty that the city pay its proportionate share of the judges compensation, but there is no allegation in the complaint that this portion has not been paid.

R. C. 1901.31 provides, among other things, that the compensation for the Clerk of the Municipal Court *shall* be provided for in the manner set forth in R. C. 1901.11; and R. C. 1901.311 provides for special deputy clerks, stat-

ing that such clerks "* * * shall receive such compensation payable in semi-monthly installments out of the city treasury *as the court may prescribe."* (Emphasis added.) In each instance, the legislative authority has a statutory duty to appropriate the city's portion of all money requested for these purposes, but, as stated above, there is no allegation in the complaint that funding for these purposes has not occurred.

Paragraph (F) of R. C. 1901.32 similarly provides for compensation of certain personnel in the Cleveland Municipal Court system, as follows:

"The chief deputy clerks, the chief clerks, and all other deputy clerks, shall receive such compensation as the clerk prescribes. The bailiff, all deputy bailiffs, and assignment room personnel shall receive such compensation as the court prescribes.

"* * *

"In the Cleveland Municipal Court, the Chief Justice may appoint such official court reporters for the civil branch of the court, as the business of the court requires, on a full-time, per diem, or contractual basis, whose compensation shall be determined by the Chief Justice of the court. Such compensation shall be payable * * * in the same proportion as designated in Section 1901.11 of the Revised Code * * *."

Paragraph (C) of R. C. 1901.32, however, provides: "The *legislative authority may* purchase motor vehicles for the use of the bailiffs and deputy bailiffs as the court determines they need to perform the duties of their office." (Emphasis added.) Thus, the legislative authority need not purchase all vehicles requested by the court. It must, however, allocate expenses for those vehicles acquired.

The legislative authority also has discretion as to the compensation to be received by the following personnel appointed by a judge or judges of a Municipal Court: Interpreters; psychiatrists; probation officers; assignment commissioner and deputy assignment commissioners; typists; stenographers; statistical clerks; and official court reporters. R. C. 1901.33.

The statute most directly in point in this instance is R. C. 1901.36, which provides, in part:

"The legislative authority shall provide for the use of the court suitable accommodations for a law library, complete sets of reports of the supreme and inferior courts and such other law books and publications as are deemed necessary by the *presiding judge*, and shall provide for each courtroom, a copy of the Revised Code.

"The legislative authority shall provide such other employees as are necessary, each of whom shall be paid such compensation out of the city treasury as the *legislative authority prescribes*. It [the legislative authority] shall provide all necessary form books, dockets, books of record, and all supplies including telephone, furniture, heat, light, and janitor service, and for such other ordinary or extraordinary expenses as *it* deems advisable or necessary for the proper operation or administration of the court." (Emphasis added.)

It is only in regard to the law library that sole discretion is left to the "presiding judge." The remaining clauses of R. C. 1901.36 are geared to the discretion of the "legislative authority." Therefore, unlike Juvenile Courts, Municipal Courts remain dependent to a reasonable extent upon the legislative authority of the municipality in which they sit. They are not entitled by statute or otherwise to an unquestioned appropriation of *all* sums of money requested, nor is their entitlement to be determined solely on whether their request constitutes an abuse of discretion.

However, the legislative authority is bound, as regards a Municipal Court, by the language of paragraphs one and two of the syllabus in *State, ex rel. Foster*, v. *Bd. of County Commrs., supra* (16 Ohio St. 2d 89). As stated therein, at page 92:

"It is a well-established principle that the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers. The proper administration of justice requires that the judiciary be free from interference in its operations by such other branches.

Indeed, it may well be said that *it is the duty of such other branches of government to facilitate the administration of justice by the judiciary.*" (Emphasis added.)

Whether treated for budget purposes as one of a number of branches of city government, or afforded its true status as a separate branch of tripartite city government, a Municipal Court may not be impeded by the legislative authority in the exercise of its administration of justice. In this instance, the duty of the legislative authority is to appropriate those funds which are necessary to facilitate the administration of justice by the Municipal Court.

We are not prepared, under the circumstances of the allegation contained in the complaint, to find that the reduced allocation of funds was sufficient to impede the Cleveland Municipal Court in the administration of justice.

We do not question the advantages to be gained should the Municipal Court be provided additional space, air conditioning and a computer. However, we do not find that city council has abused the discretion afforded it by R. C. 1901.-36 in this instance.

Having found no violation of an express statutory duty as exists for Juvenile Courts (*State, ex rel. Milligan,* v. *Freeman* [1972], 31 Ohio St. 2d 13; R. C. 2151.10), nor a violation of the inherent duty of the legislative authority to not impede the administration of justice, we conclude that, in this case, the legislative authority has not failed in its duty. Accordingly, the writ of mandamus may not issue.

For the foregoing reasons, the writ is denied.

*Writ denied.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.